IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                    )
                                          )
      U LOCK INC,                         )
                                          )        Case 23-cv-00691-CB
                         Debtor.          )
—————————————————————————————— )
GEORGE SNYDER,                            )
                                          )
                  Appellant,              )
                                          )
      v.                                  )
                                          )
CHRISTINE BIROS,                          )
                                          )
                  Appellee.               )

APPENDIX TO BRIEF


Claim 5-1

Entry 337 Biros Objection

Entry 337-1 Excerpts from Biros Exhibit 1 Meeting of Creditors

Entry 338  Hearing Notice – Non Evidentiary

Entry 358 George Snyder's Response to Biros Objection

Entry 359 Declaration of George Snyder re Claim 5-1 and Response

Entry 377  Transcript Excerpts NON-Evidentiary Hearing

Entry 366 Order Disallowing Claim 5-1

Entry 372  Notice of Appeal from 366

                              Respectfully submitted,
                              */s/ George Snyder*
                              George Snyder

**Fill in this information to identify the case:**

Debtor 1    U LOCK INC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **WESTERN DISTRICT OF PENNSYLVANIA**

Case number:   **22–20823**

FILED

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF**
**PENNSYLVANIA**

8/26/2022

**Michael R. Rhodes, Clerk**

Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

George Snyder

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

George Snyder

Name

Box 15
Irwin, PA 15642

Contact phone _____

Contact email    snyder4judge@yahoo.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

**Where should payments to the creditor be sent?** (if different)

Name

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6.Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | | |
|---|---|---|
| **7.How much is the claim?** | $ 99000.00 | **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8.What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>wage, fair labor standards. |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br><br>**Amount of the claim that is secured:** $ _____<br><br>**Amount of the claim that is unsecured:** $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed)    _____ %<br><br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| **10.Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11.Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|---|
| | | ☐ Yes. *Check all that apply*: | | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   8/26/2022
                   MM / DD / YYYY

/s/ George Snyder

Signature

Print the name of the person who is completing and signing this claim:

Name   George Snyder

First name   Middle name   Last name

Title   _____

Company   _____

Identify the corporate servicer as the company if the authorized agent is a servicer

Address   Box 15

Number   Street

Iriwn, PA 15642

City   State   ZIP Code

Contact phone   _____   Email   snyder4judge@yahoo.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy No. 22-20823 |
| U LOCK INC, | Chapter 7 |
| Debtor. | |
| CHRISTINE BIROS, | Related Doc. No.: |
| Movant, | |
| v. | |
| GEORGE SNYDER, | |
| Respondent. | |

### OBJECTION TO CLAIM NUMBER 5 FILED BY GEORGE SNYDER

Christine Biros, as creditor and party in interest in the above captioned chapter 7
bankruptcy case ("Biros"), by and through the undersigned counsel, files this *Objection to Claim
Number 5 Filed by George Snyder* (the "Objection"), and in support thereof states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334. This
matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant
to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are section 502 of the
Bankruptcy Code and Rules 3002 and 3007 of the Federal Rules of Bankruptcy Procedure
("FRBP").

3. Biros is a creditor and party-in-interest in this case and thus has standing to object
to the claim pursuant to 11 U.S.C. § 502.

## BACKGROUND

4.       U Lock Inc. ("Debtor" or "U Lock")'s case was commenced by the filing of an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on April 27, 2022 (the "Petition Date").

5.       The Debtor did not file a response to the involuntary petition.

6.       On June 17, 2022, the Court entered an Order for Relief.

7.       George Snyder ("Snyder") and his brother Kash Snyder ("Kash") are the principals of the Debtor.

8.       Robert H. Slone (the "Trustee") is the duly appointed Chapter 7 Trustee for the Debtor and is so acting.

9.       On August 26, 2022, Snyder filed a proof of claim, claim number 5 on the claims docket, in the amount of $99,000.00 for "wage, fair labor standards" with no supporting documentation or other description (the "Wage Claim" or "Claim Number 5").

## CLAIM OBJECTION

10.      11 U.S.C. § 502 provides that a properly filed proof of claim is deemed allowed unless a party in interest objects.  Various subsections of section 502 set forth the grounds for disallowing a claim, including section 502(b)(1), which authorizes disallowance because the claim is unenforceable under any agreement or applicable law.

11.      Pursuant to 11 U.S.C. § 502(b)(1), in relevant part, if an objection to a claim is made, the court shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

12.    The burden of proof for claims filed pursuant to 11 U.S.C.S. § 502(a) is a shifting one and rests on different parties at different times. Under applicable law, the claimant must initially allege sufficient facts to support its claim and, upon meeting this standard of sufficiency, the claim is prima facie valid. Upon objection to the claim, the burden then shifts to the objecting party to produce evidence sufficient to negate the prima facie valid claim. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden then reverts back to the claimant. The claimant must then prove the validity of the claim by a preponderance of the evidence. *Benninger v. First Colony Life Ins. Co. (In re Benninger),* 357 B.R. 337, 340 (Bankr. W.D. Pa. 2006).

13.    Snyder's Wage Claim is based on alleged wages due from the Debtor assumingly pursuant to the Fair Labor Standards Act, 28 U.S.C. §§201 to 209 (the "Fair Labor Act").  The Claim should be disallowed as not enforceable under applicable law against the Debtor for the reasons set forth herein.

14.    Snyder signed Official Form 202 Declaration Under Penalty of Perjury for Non-Individual Debtors indicating that as Director of the Debtor he has examined the information in the schedules and statement of financial affairs filed and believes it to be true and correct (the "Schedules").  *See*, Declaration, Doc. No. 66.

15.    Schedule D and E/F do not list Snyder as a creditor or having any claim, cause of action or otherwise against the Debtor.

16.    Additionally, Schedule G does not list any employment or other executory contract with Snyder.

17.    Nowhere in the Schedules is there any evidence of a debt owed to Snyder.  If Snyder had any such claim for wages from Debtor at the time he signed the Schedules under penalty of

perjury, he should and would have made it known.  The fact that he did not disclose it confirms

that he did not believe that he had any right to payment from the Debtor.

18.     Moreover, Snyder is judicially estopped from making any such claim now by

failure to disclose it in the Schedules and during the course of this case, including at the two 341

meeting of creditors.

19.     Judicial estoppel is a discretionary doctrine recognized by the Third Circuit that

prevents injury to the courts and the justice system by dismissing claims — regardless of their

merit — when such dismissal is necessary to prevent a litigant from playing fast and loose with

the courts. The doctrine is applied only to avoid a miscarriage of justice and only when the party

to be estopped (1) took a position during litigation that is irreconcilably inconsistent with his or

her present position, (2) the party changed his or her position in bad faith, and (3) no lesser sanction

would adequately remedy the damage done by the litigant's misconduct. The Third Circuit and

district courts have invoked the doctrine to dismiss claims where plaintiffs who are in bankruptcy

(or were in bankruptcy) failed to disclose to creditors pending or potential causes of action as

contingent assets in bankruptcy filings. Judicial estoppel remains a fact-specific, equitable

doctrine, applied at the courts' discretion. *Coles v. Carlini*, 2013 U.S. Dist. LEXIS 101873, *1

20.     Snyder, as principal of the Debtor, has testified extensively that the Debtor has no

employees.

21.     In fact, both Snyder and Kash, the principals of the Debtor testified that the Debtor

had no employees when the bankruptcy was filed and never had any. *See*, September 9, 2022 341

Transcript ("September 341 Transcript"), Page 15:3-13); Page 16:1-2; Page 29:5.  A true and

correct copy of the September 341 Transcript is attached hereto and incorporated herein as Exhibit

"A'.

22.     *See also*, 341 Transcript January 6, 2023 ("January 341 Transcript"), Page 8-9.  A
True and correct copy of the January 341 Transcript is attached hereto and included herein as
Exhibit "B".

23.     Additionally, on October 1, 2018, U Lock responded to Biros' initial discovery
requests in an action filed in Westmoreland County against U Lock (the "Discovery Responses")
when asked to identify all current and former employees of Debtor, that "it does not maintain
employees and did not maintain employees in the past.  U Lock operates through officers,
volunteers, and contractors."  A true and correct copy of the relevant redacted portion of the
Discovery Responses are attached hereto and incorporated herein as Exhibit "B".

24.     Additionally, Snyder testified at the September 341 when asked about why his
Wage Claim wasn't listed on the Debtor's Schedules as follows: "The $99,000 was what Christine
would owe me. We were -- Christine was in charge.  She was the -- she was the silent partner, and
things changed along the way and now this lawsuit came and as, as a result, any work I've done
there over the past seven years I didn't get paid. So I never got any officer compensation or
anything from her, so that those -- those stem from my wages, not -- not others." Exhibit A, Page
22:24-23:11.

25.     This testimony reflects that Snyder did not believe the Debtor owed him any money
for employment but rather believed he was owed money (or property) from Biros relating to their
ongoing dispute over the real property from which the Debtor operated.  Biros was not an officer
or director of the Debtor and had no control over compensation or wages- officer or employee.

26.     Snyder later testified during continued questioning on his Wage Claim at the
September 341 that "well either her or U Lock owes me, you know, at least minimum wage, but
she controlled the company." Exhibit A, Page 24:9-11.

27.     Snyder's testimony to defend his Wage Claim is that he, Kash Snyder and Shanni Snyder all worked for the Debtor but did not receive any pay.  Yet, Kash Snyder has not filed a claim nor was any claim listed for Kash Snyder on the Schedules.  In fact, there are no employee claims listed on the Schedules (excluding Shanni Snyder's claim based on her fraudulent Default Judgment arising from alleged unpaid wages).

28.     Likewise, Snyder signed the attached Declaration to the Trustee under penalty of perjury (the "Declaration") regarding employees and the nonissuance of any W2s or 1099s that there were no salaried employees and no 1099s were filed because any persons who did work did not receive cash compensation in excess of $550.00.  A true and correct copy of the Declaration is attached hereto and incorporated herein as Exhibit "C".

29.     In the Declaration, Snyder testifies as follows: "Our executive employees such as John Biros, Kash Snyder and myself, we did not take money for salary, all hoping to advance the company until Robert Biros interfered and made Christine Biros file suit.  I understand we were due minimum wage for our work because even executives are entitled to that, but we did not pay it because the company had very little revenue." *See*, Exhibit C, ¶7.

30.     However, Snyder is not entitled to minimum wage under the Fair Labor Act, even if Snyder could make a claim to be an employee as it is inapplicable here.

31.     First, as set forth above, Snyder is not an employee of the Debtor as the Debtor had no employees and thus the Fair Labor Act would not apply.

32.     Second, even assuming arguendo, Snyder was somehow able to establish he was an "employee," the Fair Labor Act provides in relevant part in Section 203(2) that any establishment that has as its **only regular employees the owner thereof** or the parent, spouse, child or other members of the immediate family of such owner **shall not be considered to be an**

**enterprise engaged in commerce or in the production of goods for commerce as part of such enterprise**.

33.    To receive minimum wage under the Fair Labor Act, Section 206 requires minimum wage for every employer to pay to his employees who in any workweek is engaged in commerce or in the production of goods for commerce. 29 U.S.C. Section 206.

34.    Accordingly, pursuant to the Fair Labor Act, Snyder would not be eligible to receive minimum wage under the Fair Labor Standards Act as he is the owner of the Debtor and thus the Debtor would not be considered to be an enterprise engaged in commerce or in the production of goods for commerce as part of such enterprise.

35.    Snyder might try to claim that he was a contractor or contract worker for U Lock during the multiple years covered by his Wage Claim.

36.    There is no assertion or evidence in any of the numerous pleadings and other filings under oath by Snyder or U Lock that would support any claim that there was a contract relationship between Snyder and U Lock for the providing of the services that Snyder claims to have provided.

37.    There is no contract under applicable non-bankruptcy law.  There is no bankruptcy law basis for a prepetition claim by Snyder as asserted in Claim Number 5.

38.    Even if Snyder could maintain a claim against U Lock under the Fair Labor Act, the Claim is deficient on its face as there is no applicable time period or calculation provided to provide support for the Wage Claim.  Accordingly, it is likely that the Wage Claim could not cover the time period requested, as the statute of limitations under the Fair Labor Act is two years and arguably this Wage Claim seeks more than seven (7) years of alleged wages in Claim Number 5. 28 U.S.C.S. §255(a).

39.    "Under the Fair Labor Standards Act (FLSA), the applicable statute of limitations

is three years for a willful violation, two years otherwise. 29 U.S.C.S. 255(a). *Copley v. Evolution Well Servs. Operating, LLC,* No. 2:20-CV-1442-CCW, 2022 U.S. Dist. LEXIS 17266, at *1 (W.D. Pa. Jan. 31, 2022)

40.     When an employer's actions are willful, the statute of limitations is extended to three years: "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. " 29 U.S.C. § 255(a). K*elly v. Eckerd Corp.*, No. 03-4087, 2004 U.S. Dist. LEXIS 4381, at *4-5 (E.D. Pa. Mar. 10, 2004)

41.     Even if Snyder were to allege the doctrine of equitable tolling, for the doctrine of equitable tolling to apply to the Fair Labor Act, a defendant's misleading conduct must induce a plaintiff to delay filing notice of her intent to sue.  The doctrine is not applied, however, every time a defendant makes an incorrect or even misleading statement to the Plaintiff.  Likewise, the Plaintiff has the burden of proving facts necessary to invoke the equitable tolling doctrine. *See, Kelly v. Eckerd Corp.* 2004 U.S. Dist. LEXIS 4381, at *4-5.

42.     Additionally, as referenced in the Declaration, the Debtor had no money to pay any officer or owner claims.  Snyder is a shareholder, director and officer of the Debtor and under Pennsylvania law, corporate directors owe fiduciary duties to the corporation and its shareholders. When the corporation is insolvent, the directors also owe fiduciary duties to the corporation's creditors. *Bruno v. Beacon Sales Acquisition, Inc. (In re Bruno),* 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016).

43.     Snyder's Wage Claim then would be a breach of his fiduciary duties to the Debtor as he incurred his personal employment claim during a time that the Debtor was insolvent.  Snyder, as a director and officer of the Debtor, would have known that the Debtor was insolvent yet allowed

the Debtor to continue to operate and incur his alleged wages, as well as a default judgment against

the company (of which he was aware and did not defend) by his sister, Shanni Snyder.

44. Moreover, Claim Number 5 should be disallowed by this Honorable Court pursuant

to 11 U.S.C. § 105.

45. The United States Supreme Court has recognized that by filing a claim against the

bankruptcy estate, a creditor triggers the process of "allowance and disallowance of claims,"

thereby subjecting the creditor to the bankruptcy court's equitable power. *See*, *Langenkamp v.

Culp,* 498 US 41, 44-45 (1990).

46. The bankruptcy court has the power to look behind and reduce claims based on

judgments issued by other courts, both state and federal. *In Margolis v. Nazareth Fair Grounds*,

249 F.2d 221 (2nd Cir. 1957), the Second Circuit held that a bankruptcy court may inquire into the

validity of any claim asserted against the bankrupt and may disallow it if it is found to be without

lawful existence and the mere fact that a claim has been reduced to a judgment does not prevent

such an inquiry. As the merger of a claim into a judgment does not change its nature so far as

provability is concerned so the court may look behind the judgment to determine the essential

nature of the liability for purposes of proof and allowance. *Margolis v. Nazareth Fair Grounds,*

294 F.2d at *223-224 (internal citations omitted).

47. A claim should be rejected and disallowed when it has no basis in fact or law, is

non-existent or illegal." *Diasonics, Inc. v. Ingalls*, 121 B.R. 626, 630 (Bankr. N.D. Fla. 1990)

(citation omitted).

48. In *Benninger v. First Colony Life Ins. Co. (In re Benninger)*, 357 B.R. 337, 350-

51 (Bankr. W.D. Pa. 2006), Judge Deller applied Supreme Court precedent to disallow claims in

that case as the judgments confessed against the Debtor were unlawful, referencing *Pepper v.

*Litton*, 308 U.S. 295, 301-303, 60 S. Ct. 238, 84 L. Ed. 281 (1939), where the United States

Supreme Court allowed a debtor to challenge a state court judgment in bankruptcy court on the

ground that a confessed judgment obtained by fraud was void *ab initio* for procedural reasons.

49.     In *Benninger*, the objection to proofs of claim filed by the creditor were sustained

and the claims disallowed for grounds including but not limited to the unclean hands of the

creditor.  Judge Deller acknowledged, "It is one of the fundamental principles upon which equity

jurisprudence is founded, that before a complainant can have standing in court he must first show

that not only has he a good and meritorious cause of action, but he must come into court with clean

hands." *Benninger* at 350.

50.     Additionally, the Court held that it also found "equally troubling" the fact that the

underlying basis of the creditor's claims were "dubious at best."  Thus, Judge Deller ruled that

even if the claims had some basis, he would nonetheless disallow them under the clean hands

doctrine and for public policy reasons. *Benninger* at 360.

51.     It is clear from the face of Claim Number 5, the complete lack of support for the

Wage Claim, including even a simple calculation of wages incurred, and the sworn testimony of

the officers of the Debtor that they had no employees, the failure to schedule the Wage Claim or

otherwise disclose it, despite being the Officer who prepared and signed the Schedules under

penalty of perjury, the Wage Claim should also be denied for public policy reasons.

52.     Finally, 11 U.S.C. §502(d) provides in relevant part that a court shall disallow any

claim of any entity that is a transferee of a transfer avoidable under 11 U.S.C. §§547 or 548 unless

such entity or transferee has paid the amount or turned over any such property.

53.     At the September and January 341 hearings, Snyder testified that he received the

proceeds from the sale of a 2021 Kubota. See Exhibit A Page 12:18-13:3; Exhibit B, Page 37:1-

13; Page 67:18.69:17. Snyder testified that the Kubota was sold in November 2021 and he paid himself back for an outstanding loan from the sale.

54.     Biros believes and therefore avers, the Trustee will be filing a Complaint to Avoid and Recover the proceeds Snyder received from the Kubota pursuant to 11 U.S.C. § 547 and accordingly, the claim should also be disallowed pursuant to 11 U.S.C. § 502(d).

WHEREFORE, Christine Biros respectfully requests that this Honorable Court enter an order substantially in the form attached hereto granting this Objection and disallowing the Snyder Claim.

Dated: February 24, 2023                          BERNSTEIN-BURKLEY, P.C.

                                        By: */s/ Robert S. Bernstein*
                                             Robert S. Bernstein (PA ID No. 34308)
                                             Lara S. Martin (PA ID No. 307272)
                                             601 Grant Street, Floor 9
                                             Pittsburgh, PA 15219
                                             Telephone: (412) 456-8100
                                             Facsimile: (412) 456-8135
                                             rbernstein@bernsteinlaw.com
                                             lmartin@bernsteinlaw.com

                                             *Counsel for Christine Biros*

Transcript of the Testimony of

# 341 (a) MEETING OF CREDITORS

September 9, 2022

## IN RE: U LOCK, INC.



**412-261-2323**
**depo@akf.com**
**www.akf.com**

4

1          MR. SLONE:  Call the Section

2      341(a) Meeting in the case of U Lock Inc.,

3      Case 22-20823-GLT.  This is the time and

4      place for the meeting.  I'm Robert Slone,

5      the interim Trustee.  Allen Roth is present

6      as attorney for U Lock.

7         Mr. Roth, who's present to testify for

8      U Lock today?

9          MR. ROTH:  I have George, excuse

10     me, George Snyder here.

11         MR. SLONE:  Okay.  And what

12     officer is Mr. Snyder?

13         MR. ROTH:  Vice president.

14         MR. SLONE:  Vice president?

15     Okay.

16         MR. ROTH:  Yes.

17         MR. SLONE:  Okay.  Before, let me

18     swear him in.  Mr. Snyder, please raise your

19     right hand.  And do you swear that the

20     testimony you're about to give in this

21     matter to be the truth?

22         MR. GEORGE SNYDER:  Yes, I do.

23         MR. SLONE:  Okay.  Now, we have

24     some creditors present.  I'm going to ask

25     you to state your name for the record.

341 (a) MEETING OF CREDITORS  -  9/9/2022

5

```
 1        Start with Sarah Wenrich.
 2                 MS. WENRICH:  Hi, Mr. Slone.
 3        Sarah Wenrich here on behalf of Christine
 4        Biros, and William Otto is here as well on
 5        behalf of Ms. Biros.
 6                 MR. SLONE:  Okay.
 7                 MS. WENRICH:  My apologies, Ms.
 8        Biros is also on the line.
 9                 MR. SLONE:  Okay, great.  And
10        Shanni Snyder, are you still present?
11                 MS. SHANNI SNYDER:  Yes, I am.
12                 MR. SLONE:  Okay, and you're here
13        for yourself; right?
14                 MS. SHANNI SNYDER:  Yes.
15                 MR. SLONE:  Okay.
16 EXAMINATION OF GEORGE SNYDER:
17 BY MR. SLONE
18        Q.  Okay, Mr. -- Mr. Snyder, you're
19        testifying as vice president of U Lock.  Did
20        you sign -- well, I'll get to that.  Did you
21        receive a copy of the informational sheet
22        prepared by the Office of the U.S. Trustee?
23        A.  Yes.
24        Q.  And did you read that sheet?
25        A.  Yes.
```

6

1          Q.  Are you personally familiar with the

2     information contained in the petitions,

3     schedules, statements, and related

4     documents, and do they accurately reflect

5     all assets and all liabilities of the

6     company?

7          A.  Yes.

8          Q.  And did you sign the petition and

9     related documents?

10          A.  Yes.

11          Q.  Are there any errors or omissions

12     you wish to bring to my attention at this

13     time?

14          A.  No.

15          Q.  Okay.  Other than in the ordinary

16     course of business, did the company sell,

17     transfer, or give away any assets within the

18     four years prior to filing this case?

19          A.  Nothing outside the ordinary

20     operation of the business.

21          Q.  Yes, no, or will you send me a

22     statement?

23          A.  Oh, I'm sorry.  I said no, nothing

24     outside --

25          Q.  Oh, okay, I'm sorry.

341 (a) MEETING OF CREDITORS  -  9/9/2022

7

1          A.  -- business.

2          Q.  Does the company expect to receive

3     anything of value in the next six months?

4          A.  Let me -- let me back up for a

5     minute.  I had mentioned to you, we talked

6     about that Kubota tractor I brought in the

7     -- I brought in the serial number for you.

8     That was sold last year.

9          Q.  Okay.

10         A.  And then the Christine Biros

11    property.

12         Q.  Does the company expect to receive

13    anything of value in the next six months?

14         A.  Just whatever other rents would be

15    collected.

16         Q.  Do you have a claim or cause of

17    action against anyone for any reason or does

18    anyone owe you money?

19         A.  Yeah, everything what's in the

20    schedule there.

21         Q.  Okay.  It says see --

22         A.  And it --

23         Q.  See schedules.  Does the company own

24    any real estate or real estate that has not

25    been listed?

341 (a) MEETING OF CREDITORS  -  9/9/2022

8

1          A.  Yes.

2          Q.  You're saying yes.  Is that the

3     property, the 21 acres?

4          A.  Yes.

5          Q.  And that's subject to the Biros

6     claim; right?

7          A.  Correct.

8          Q.  What was -- this was an involuntary;

9     right?

10          A.  Correct.

11          Q.  But you didn't contest it?

12          A.  That's correct.

13          Q.  So what's the reason for filing this

14     case?

15          A.  The reason that the other person

16     filed the -- filed the lawsuit, you mean, or

17     filed the involuntary bankruptcy?

18          Q.  Yeah, but why didn't you contest it?

19          A.  (Inaudible).

20          Q.  I mean, there's a reason that you're

21     in bankruptcy, or you would have contested

22     it?

23          A.  Well, I was served -- I was served

24     an involuntary bankruptcy and I kind of

25     actually thought (Inaudible).

341 (a) MEETING OF CREDITORS  -  9/9/2022

9

1          MR. SLONE:  Whoever that is,

2     please mute yourself.

3          MS. SHANNI SNYDER:  (Inaudible)

4     playing.

5      A.  We really had, you know, no assets

6     --

7      Q.  Hang on, Mr. Snyder.

8      A.  We have -- okay.

9          MR. SLONE:  Somebody's phone is

10    ringing or something.  Check your phones,

11    everybody.  Thank you.

12     Q.  Okay, Mr. Snyder you can continue.

13     A.  Okay, I said we didn't really have

14    any assets. We owed money, and we didn't

15    really have any defenses for the claims.  So

16    the bankruptcy may have other defenses.

17     Q.  When was U Lock incorporated?

18    Approximately when was it incorporated?

19       Hello?  Anybody there?

20          MS. WENRICH:  I'm here.  I'm

21    still here.

22          MR. OTTO:  I'm here.

23     Q.  Okay.

24          MR. OTTO:  I'm here.

25     Q.  When was the company incorporated?

```
                                                      10
 1      Mr. Roth, do you know?

 2      George Snyder and Allen Roth, are you guys

 3      on the line?  Hello?

 4                   MR. SLONE:  Okay, everybody else

 5      is on the line; right?  Mr. --

 6                   MS. WENRICH:  Yes.

 7                   MR. SLONE:  Sarah and Bill?

 8                   MR. OTTO:  Yes.

 9                   MS. SHANNI SNYDER:  This is

10      Shanni. I'm still on the line.

11                   MR. OTTO:  This is Bill Otto.

12      I'm still on the line.

13                   MR. SLONE:  Okay.  What happened

14      to Snyder and Roth?

15                   MS. SHANNI SNYDER:  Seems like it

16      was disconnected.

17                   MR. SLONE:  Were they at the same

18      place?  Oh, Jesus.

19                   MS. SHANNI SNYDER:  Oh, me?  I

20      have no idea.

21                   MR. SLONE:  Okay.  I don't know

22      what to say.

23                   MS. SHANNI SNYDER:  I think that

24      was just, the music that was playing was

25      from the office.
```

11

1            MR. SLONE:  Could somebody call

2       Roth?  Maybe I can call him on my cell

3       phone. Okay, we'll call. (Phone dialing.)

4            MR. SLONE:  Hi, Bob Slone

5       calling. We are in a meeting of creditors

6       for U Lock and Allen Roth and George Snyder

7       disappeared.  Are they there?

8            MR. ROTH:  Hi, this is Allen.

9            MR. SLONE:  Allen, you guys

10      disappeared from the --

11           MR. ROTH:  Yeah, I was trying to

12      call back in 'cause I have no idea what

13      happened.  (Inaudible) went blank.

14           MR. SLONE:  Okay, call back in.

15      If not, we'll put you on the -- on, on the

16      cell phone.  But call back in right now.

17           MR. ROTH:  Okay.

18           MR. SLONE:  Thank you.

19           MR. ROTH:  We'll do it right now.

20           MR. SLONE:  Okay, they're calling

21      back in.

22         Okay, Allen Roth?  Hello? (Phone

23      dialing.)

24           UNIDENTIFIED SPEAKER ON PHONE:

25      Allen Roth's office.

### 341 (a) MEETING OF CREDITORS  -  9/9/2022

                                                            12

1                    MR. SLONE:  Yes, Allen said he's

2          trying to call back in.  We --

3                    UNIDENTIFIED SPEAKER ON PHONE:

4          Okay, hold on a second.

5                    MR. SLONE:  If not, we'll just

6          put -- we'll just do it on the cell phone.

7                    MR. ROTH:  All right, this is

8          Allen. We're back.

9                    MR. SLONE:  Okay, great.  So you

10         have your backup music on, Allen.  Okay,

11         I'll turn -- that's on the other line.  I'll

12         turn that off.  Okay, we're back.

13    CONTINUATION OF EXAMINATION OF GEORGE SNYDER:

14    BY MR. SLONE

15         Q.  Okay, Mr. Snyder, the last question,

16         when was this company incorporated?

17         A.  In 2015.

18         Q.  Who are the officers?

19         A.  It was -- okay, I was going to

20         elaborate on the -- on the corporation part

21         'cause that was kind of what brought us

22         here.  Or is that enough for you?

23         Q.  That's enough for right now.  Just

24         who are the officers now, or at the time of

25         the filing?

341 (a) MEETING OF CREDITORS  -  9/9/2022

13

1          A.  My brother, Kash Snyder.

2          Q.  Kash, what was he?

3          A.  President.

4          Q.  And you're vice president, George

5     Snyder?

6          A.  Yes.

7          Q.  Any other officers?

8          A.  No.

9          Q.  Who are the shareholders?

10         A.  There's a company called Accredited

11    Business Consolidators Corp and --

12         Q.  Could you speak up, please?

13         A.  Yes.  There's a company called

14    Accredited Business Consolidators Corp, and

15    there's over a thousand shareholders, so we

16    issued, issued shares.  But I'm the majority

17    shareholder.

18         Q.  How much do you own, what

19    percentage?

20         A.  I think it's 51 percent.

21         Q.  I didn't see that Accredited

22    creditors listed in your schedules.  Is --

23         A.  You know what, when we -- I'm going

24    back to with Biros, I was 51 percent.  With

25    currently I'm 90 percent.

341 (a) MEETING OF CREDITORS  -  9/9/2022

14

1    Q.  You're 90 percent?

2    A.  We can send you a shareholder list.

3    Q.  Yeah, you should do that.  Do they

4    know that this company is in bankruptcy?

5    A.  We provided Otto with a list.

6    Q.  Well, he's -- so what?  Who's John

7    Biros?

8    A.  They -- and they probably don't know

9    the bankruptcy.

10    Q.  It says he owns 25 percent of this

11    company.

12    A.  Who is that?

13    Q.  John, on your statement, Question

14    No. 28, list all the debtors, officers,

15    directors, managing members, general

16    partners, members in control, controlling

17    shareholders, or other people in control of

18    the debtor.  You have one person listed,

19    John Biros, 25 percent.  It says a silent

20    partner from inception.  Your name's not

21    listed.  Kash isn't listed.  No other names

22    are listed here.  So why don't you file an

23    amended schedules so we know --

24    A.  Okay.

25    Q.  -- where we're coming from.

341 (a) MEETING OF CREDITORS - 9/9/2022

15

1      A. Silent partner. Okay, we'll file an

2    amended.

3      Q. How many employees did the company

4    have when the bankruptcy was filed?

5      A. None.

6      Q. None. When's the last time the

7    company had employees?

8      A. Up till recently, we had -- there

9    was always someone helping there. There was

10   always about a half a dozen people helping

11   at different times, you know, throughout the

12   years. But just the -- just limited, you

13   know, just a few hours a year.

14     Q. Can you get me the records of that?

15   Were the withholding taxes paid for the

16   taxes for those employees? Were they issued

17   W-2's?

18     A. Okay, I'll get you the records for

19   the people that worked.

20     Q. Give me copies of the W-2's for the

21   last four years.

22     A. Okay. But there wouldn't be any

23   records 'cause they were -- they were

24   contractors, not -- not -- you know, we

25   didn't have W-2's.

341 (a) MEETING OF CREDITORS  -  9/9/2022

16

1      Q.  So they weren't employees?

2      A.  No.

3      Q.  Well, get me records of what, what

4   they were paid.

5      A.  Okay.  Past four years?

6      Q.  Yes.

7      A.  Will do.

8      Q.  Okay, your bankruptcy schedules said

9   your gross revenues for 2021 were about

10   $13,000; for 2020 was about $12,000.  Do you

11   --

12      A.  Yes.

13      Q.  Thirteen two for '21.  Do you know

14   what it would have been for 2019?

15      A.  Not right offhand.  My brother would

16   probably know that.

17      Q.  Well, was it in that same range?

18      A.  Probably pretty much about the same.

19   (Inaudible) kind of estimate, so I would

20   guess that 2019 would be about the same.

21      Q.  Okay.  How about years prior to

22   that, has it always been about that much?

23      A.  Yeah.  Yeah, it's always been

24   (Inaudible).

25      Q.  Okay.  Does the company have an

17

1     accountant?

2          A.  No.

3          Q.  When -- did the company file tax

4     returns 2020 or 2021?

5          A.  No, we did not.

6          Q.  Did the company ever file tax

7     returns?

8          A.  No.

9          Q.  Why?

10          A.  That was, in 2015 when we got it,

11     Christine Biros and John Biros were silent

12     partners, and everything was pretty much at

13     their direction this whole time.  And they,

14     you know, they ordered us not to file the

15     tax returns because they were indicted by

16     the Attorney General. They wanted to wait

17     until that was over, so we were just in kind

18     of a holding pattern since the inception.

19     And then at some point this lawsuit came

20     about.

21          Q.  Since the bank -- yeah, since the

22     bankruptcy was filed, have there been any

23     effort to prepare tax returns?

24          A.  Yes, I think we were looking for an

25     accountant and we're just gathering our bank

18

```
1    statements and receipts, everything we're
2    going to need for, to file tax returns,
3    'cause we anticipate the Judge had mentioned
4    he was concerned and wanted tax returns, so
5    we're preparing for that.
6         Q.  Has there been any payment to any
7    officers or shareholders in the last two
8    years?
9         A.  The -- no.
10        Q.  No?  If I go back to years three and
11   four, has there been any payments to
12   officers or shareholders?
13        A.  No for three and four.  But let me
14   back up. The last question you asked, was
15   that, you asked for the -- what year were
16   you asking as far as the payments to --
17        Q.  Last two years.  Well, let's say
18   '22, '21, or '20.
19        A.  Yes, in 2021 the -- there was that
20   tractor we had mentioned, the Kubota that
21   was sold.  There was money there and that
22   was -- that was used to reimburse me for
23   loans I provided to U Lock over the past
24   six, seven years.
25        Q.  And how much was that?
```

341 (a) MEETING OF CREDITORS - 9/9/2022

19

```
1          A.   The sale of the tractor was $45,000.

2          Q.   And you got the $45,000?

3          A.   Most of it.

4          Q.   And that was --

5          A.   From two thousand --

6          Q.   -- to reimburse you?

7          A.   Yes.

8          Q.   For loans?

9          A.   Yes.

10         Q.   Can you get me the information

11    regarding this sale and when you got that

12    money for the Kubota?

13         A.   Okay.  Allen, could you -- piece of

14    paper?

15         Q.   Anything else?

16         A.   No, I think that's it.  Well, yeah,

17    as far as what I paid back to my sister

18    also, Tammy, I had to pay her back

19    approximately $7,000 for, she had loaned the

20    company money for property taxes one year.

21         Q.   When was that done?

22         A.   (Inaudible) we anticipate getting

23    our taxes done here in the next 90 days.

24         Q.   When was Tammy paid?  Is that Tammy

25    Snyder?
```

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>U LOCK INC,<br><br>          Debtor. | Bankruptcy No. 22-20823<br><br>Chapter 7 |
| CHRISTINE BIROS,<br><br>          Movant,<br><br>          v.<br><br>GEORGE SNYDER,<br><br>          Respondent. | Related Doc. No.: |

## NOTICE OF HEARING AND RESPONSE DEADLINE REGARDING OBJECTION TO CLAIM NUMBER 5 FILED BY GEORGE SNYDER

TO THE RESPONDENT(S):

You are hereby notified that the Movant seeks an order affecting your rights or property.

You are further instructed to file with the Clerk and serve upon the undersigned attorney for Movant a response to the Motion by no later than March 27, 2023 (*i.e.*, thirty (30) days after the date of service below), in accordance with the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and the general procedures of the presiding judge as found on the Court's webpage at www.pawb.uscourts.gov. If you fail to timely file and serve a written response, an order granting the relief requested in the Motion may be entered and the hearing may not be held. Please refer to the calendar posted on the Court's webpage to verify if a default order was signed or if the hearing will go forward as scheduled.

You should take this Notice and the Motion to a lawyer at once.

An in-person hearing will be held on April 13, 2023,, at 10:30 a.m. before Judge Gregory L. Taddonio in Courtroom A, 54th Floor U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA, 15219. In accordance with Judge Taddonio's procedures, parties may appear for non-evidentiary matters remotely by utilizing the Zoom video conference platform. Parties seeking to appear remotely must register for the hearing by submitting a registration form

via the link published on Judge Taddonio's website (which can be found at
http://www.pawb.uscourts.gov/judge-taddonios-video-conference-hearing-information) by no
later than **4 p.m. on the business day** prior to the scheduled hearing. All parties participating
remotely shall comply with Judge Taddonio's *General Procedures*, (which can be found at
http://www.pawb.uscourts.gov/sites/default/files/pdfs/glt-proc.pdf).

       **Parties who fail to timely register for remote participation will be expected
to attend the hearing in person.**

       Only a limited time of ten (10) minutes is being provided on the calendar. No
witnesses will be heard. If there is an issue of fact, an evidentiary hearing will be scheduled by
the Court for a later date.

Date of Service: February 24, 2023

              BERNSTEIN-BURKLEY, P.C.

          By: * /s/ Robert S. Bernstein        *
             Robert S. Bernstein (PA ID No. 34308)
             Lara S. Martin (PA ID No. 307272)
             601 Grant Street, Floor 9
             Pittsburgh, PA 15219
             Telephone: (412) 456-8100
             Facsimile: (412) 456-8135
             rbernstein@bernsteinlaw.com
             lmartin@bernsteinlaw.com

             *Counsel for Christine Biros*

FILED
3/28/2023 12:03 PM
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  U LOCK INC. a/k/a | ) | |
| U-LOCK INC. | ) | Case. 22-20823-GLT |
| | ) | |
| Debtor. | ) | |
| | ) | RE Motion at 337 |

### <u>GEORGE SNYDER'S RESPONSE OPPOSING THE OBJECTION TO MY CLAIM</u>

I am an officer of the debtor U Lock.  I file this response to the objection in my personal capacity as a creditor who filed the proof of claim.

Biros attaches one declaration I provided, but forgot to attach the Declaration I gave to the Trustee on or around September 7 2022.  I have attached it hereto.  The trustee emailed asking for more information about my claim so I provided the Declaration.  The Trustee gives Ms. Biros everything I give him, so I am not sure why they forgot it. The Trustee didn't ask for more.  The Declaration about the employees was about the request for W2s and 1099s that don't exist, explaining why, which I gave to the Trustee at his request and he gave it to Biros.


Anyway as this Court knows, I worked for U Lock, or I guess Christine Biros if she is right that she owned the business at all times, since 2015 and received nothing to compensate myself.  It is true I didn't list myself as an employee when I did the schedules for U Lock. From the company's perspective, I was an officer. But I also performed actual labor there, maintenance, cleanup, supervising contractors, administering, customer service, everything, meeting with John Biros practically every day from 2015 to 2018, meeting with Christine Biros weekly to give status updates, all of that is work.

From my personal perspective, I filed a proof of claim by the claim's deadline giving everyone notice of my claim.  I thought that was the procedure.  I didn't know I had to amend and amend every time a claim was filed.  I can file amended schedules for U Lock and list all

these claims that were lodged including the Biros claims of the specious environmental damage,the shanni claim, and my claim. Certainly the IRS I think I listed them on the original schedules.

I filed this claim for wage after researching this Shanni Snyder claims and how vast and broad the FLSA was, I believe it covers me even though I was an officer and owner. There were over 1000 shareholders I didn't list them all on the schedules because this court didn't convert the case to Chapter 11. I understand I don't have to give a shareholder list in a Chapter 7. I can upload one. Also John Biros was partner, he had daily meetings with me form 2015 to 2018, then even after that meetings up until 2019. Christine Biros had weekly meetings with me, even after she filed her lawsuit, still had meetings about the plan moving forward. So it's just not the shareholders here that were on paper, this was supposed to be a partnership.

Regardless I think my claim should be sustained, I think I am entitled to at least minimum wage or the minimum executive compensation. I did a lot of work. I incorporate my declaration attached and the declaration that Biros did file.

I declare under penalty for perjury that the above is true and correct.

This March 26, 2023.

George Snyder
PO Box 15
Irwin PA 15642
412-979-9999

DECLARATION OF GEORGE SNYDER

FILED
3/28/2023 12:03 PM
CLERK
U.S. BANKRUPTCY
COURT - WDPA

I, George Snyder, declare and state under the penalty of perjury that the following is true and correct:

1.  My name is George Snyder.

2.  From July 2015 to the present, I acted as executive of U Lock Inc. and/or, pursuant to Christine Biros' theory, her constructive trust. I believe that U Lock Inc. owes the minimum wage and, if Christine Biros is correct in her legal theories that U Lock is a constructive trust for her, then she jointly owes the wage.

3.  I did not perform only executive duties at U Lock, I also performed labor. Specifically, my duties entailed: Management of the enterprise, weekly meetings with the Biros family (John and Christine) through June 2018, renting units, collection of rents, check mail daily, cut grass and whack weeds weekly, spray round up monthly, remove trees and overgrowth, remove snow, plow snow, salt roads, graded parking area, put down millings, graded access road in back to upper level, cleaned up tires and scrap that had been dumped, met routinely with customers, cleaned out units when a person left, fixed and secured electrical service (guide wire for mast), fixed leaks in roof, lubricated and adjusted doors, met with and administered highways projects, moved around heavy machinery, cleanup, replaced rotting wood framing, put gravel down in both aisles, general management, monitor trespass incidents, deal with lawsuit issues, prepare documents, and many other tasks.

4.  I filed a proof of claim alleging that U Lock owed me $99,999 for wage. This is because I did not receive compensation from U Lock or Christine Biros in any way.

5.  The Fair Labor Standards Act requires that most employees in the United States be paid at least the federal minimum wage for all hours worked and overtime wage at not less than time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek.

6.  However, Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for employees employed as bona fide executive, administrative, professional and outside sales employees. Section 13(a)(1) and Section 13(a)(17) also exempt certain computer employees. These exemptions are often called the "white-collar" or "EAP" exemptions.

7. To qualify for exemption, employees generally must meet certain tests regarding their job duties and be paid on a salary basis at not less than $684 per week. Job titles do not determine exempt status. In order for an exemption to apply, an employee's specific job duties and salary must meet all the requirements of the Department's regulations.

8. I did not receive a salary of at least $684 per week.  In fact, due to U Lock's insolvency since its inception, I received no salary whatsoever.

9. I worked approximately 5 days per week.  From July 10, 2015, until April 26, 2022, when the bankruptcy was filed, there were 2,481 days.  I worked approximately 5 days per week.  Excluding weekends, there were 1,771 days, totalling approximated 7,084 hours of unpaid work.

10. The calculations I used are as follows;

**July 2015**

16 days included

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     | 1   | 2   | 3   | 4   |
| 5   | 6   | 7   | 8   | 9   | 10  | 11  |
| 12  | 13  | 14  | 15  | 16  | 17  | 18  |
| 19  | 20  | 21  | 22  | 23  | 24  | 25  |
| 26  | 27  | 28  | 29  | 30  | 31  |     |

11.

**August 2015**

21 days included

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|

**September 2015–March 2022**

September 2015–December 2015: 88 days included

Year 2016: 261 days included

Year 2017: 260 days included

Year 2018: 261 days included

Year 2019: 261 days included

Year 2020: 262 days included

Year 2021: 261 days included

January 2022–March 2022: 64 days included

**April 2022**

16 days included

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     |     | 1   | 2   |
| 3   | 4   | 5   | 6   | 7   | 8   | 9   |
| 10  | 11  | 12  | 13  | 14  | 15  | 16  |
| 17  | 18  | 19  | 20  | 21  | 22  | 23  |
| 24  |     |     |     |     |     |     |

12. While I did not *per se* "take off" weekends, I used this calendar for calculation purposes because there were some days I did not work.

13. I worked approximately 4 to 5 hours average per day or more dealing with U Lock Inc. or under Christine Biros' theory, her trust including monitoring and maintaining the property, cutting the grass, providing customer service, dealing with the legal proceedings, paying its bills, collecting from tenants, etc.Excluding weekends, there were 1,771 days, totalling approximately 7,084 hours of unpaid work.  At minimum wage, that would entitle me to $51,359.compensation from U Lock (or Christine Biros under her theory).

14. Moreover, under the FLSA, apparently I would be owed liquidated damages of the same amount because U Lock and, under Christine Biros' theory, the her trust, so I doubled the amount in my proof of claim.

15. These are extremely low estimates of the time and hours I put in.

16. Alternatively, if it is found that I am a salaried executive, I would be entitled to $684 per week, which well exceeds the $99,999 claim I submitted.

George Snyder

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                          .    Case No. 22-20823-GLT
                                .
                                .
U LOCK INC,                     .    5414 U.S. Steel Tower
                                .    600 Grant Street
                                .    Pittsburgh, PA 15219
           Debtor.              .
                                .    April 13, 2023
. . . . . . . . . . . . ..           1:30 p.m.

    TRANSCRIPT OF #294 CONTINUED ORDER TO SHOW CAUSE SIGNED
   ON 1/17/2023. (RE: RELATED DOCUMENT(S): 258 APPLICATION
  FOR ADMINISTRATIVE EXPENSES; #278 CONTINUED AMENDED ORDER
 TO SHOW CAUSE SIGNED ON 1/6/2023. (RE: RELATED DOCUMENTS(S):
   249 ORDER SCHEDULING HEARING); #345 CONSENT MOTION TO
 APPROVE COMPROMISE UNDER RULE 9019; #340 OBJECTION TO CLAIM
 OF SHANNI SNYDER; AT CLAIM NUMBER 1; #337 OBJECTION TO CLAIM
  OF GEORGE SNYDER; AT CLAIM NUMBER 5; #344 AMENDED
     APPLICATION FOR ADMINISTRATIVE EXPENSES PURSUANT TO
 11 U.S.C. 503(b)(1) AND/OR FOR PAYMENT OF ADEQUATE PROTECTION

              BEFORE HONORABLE GREGORY L. TADDONIO
              UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Law Office of J. Allen Roth
                         By:  J. ALLEN ROTH, ESQ.
                         805 S. Alexandria Street
                         Latrobe, PA 15650

For George Snyder:       By: GEORGE SNYDER, PRO SE
                         Box 15
                         Irwin, PA 15642


ECRO:                    Hayley Smith


 Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

2

APPEARANCES (Cont'd):

For Christine Biros:          Bernstein-Burkley, P.C.
                             By:  ROBERT S. BERNSTEIN, ESQ.
                                  MARK LINDSAY, ESQ.
                             601 Grant Street, 9th Floor
                             Pittsburgh, PA 15219

For Christine Biros,         The Law Firm of William E. Otto
Lead Counsel in the          By:  WILLIAM E. OTTO, ESQ.
State Court Action:          4027 Old William Penn Highway
                             P.O. Box 701
                             Murrysville, PA 15668

TELEPHONIC APPEARANCES:

Chapter 7 Trustee:           Mahady & Mahady
                             By:  ROBERT H. SLONE, ESQ.
                             223 South Maple Avenue
                             Greensburg, PA 15601

For Shanni Snyder:           The Lynch Law Group LLC
                             By:  JOHN PATRICK LACHER, ESQ.
                             501 Smith Drive, Suite 3
                             Cranberry Twp, PA 16066

- - -

3

1          ECRO:  Court may now come to order.  The Honorable
2   Gregory L. Taddonio presiding.
3          THE COURT:  All right.  Good afternoon, everyone.
4   This is the United States Bankruptcy Court for the Western
5   District of Pennsylvania and this is the Court's docket of
6   Chapter 7 and Chapter 11 matters on this Thursday, April 13,
7   2023.  The matter under consideration at this time is Case
8   Number 22-20823, U LOCK INC.  I'll begin by taking appearances
9   first here in the courtroom and I'll start over here.  Mr.
10  Roth?
11         MR. ROTH:  Alan Roth on behalf of U LOCK.
12         THE COURT:  All right, good afternoon.
13         MR. SNYDER:  George Snyder.
14         THE COURT:  All right, good afternoon.  Want to come
15  over here?
16         MR. BERNSTEIN:  Your Honor, on behalf of Christine
17  Biros, Robert Bernstein, Bernstein-Burkley.
18         THE COURT:  Okay.
19         MR. BERNSTEIN:  William Otto sitting next to me.
20         THE COURT:  All right, good afternoon.
21         MR. BERNSTEIN:  Ms. Biros is in the courtroom next to
22  him and my colleague Mark Lindsay.
23         MR. LINDSAY:  Good afternoon.
24         THE COURT:  All right, good afternoon, everyone.  All

4

1 right, that satisfies the appearances here in the courtroom and

2 then I'll take appearances on the Zoom call.  I'll start first

3 with the Chapter 7 Trustee.

4 　　　　MR. SLONE:  Yes.  Robert Slone, Chapter 7 Trustee,

5 Your Honor.

6 　　　　THE COURT:  All right, good afternoon.  And, I'll

7 take an appearance for Shanni Snyder?

8 　　　　MR. LACHER:  Good afternoon, Your Honor.  John Lacher

9 on behalf of Shanni Snyder, and Shanni Snyder is in the room

10 with me, Your Honor.

11 　　　　THE COURT:  Okay, good afternoon.  All right, and is

12 there anyone else who wishes to enter an appearance in this

13 case?

14 　　　　　　　　(No audible response)

15 　　　　THE COURT:  All right.  This is a hearing set on

16 several pending matters and I have -- the Claims Objections

17 filed by Christine Biros to the claims of George Snyder and

18 Shanni Snyder.  I have an Amended Application for Payment of

19 Administrative Expenses, including Post-Petition Rent,

20 relatedly a Consent Motion to Approve Compromise under Rule

21 9019, and then two continuations of hearings related to Orders

22 to Show Cause that were issued by the Court at Docket Numbers

23 278 and 294.  Unless there's any housekeeping matters that I

24 need to be aware of, I am just going forward in starting with

25 the claims objections, so any preliminary comments from the

1  parties that we need to address?

2                    (No audible response)

3            THE COURT:  All right, hearing none.  I'd like to

4  begin with the Christine Biros' objection to the claim of

5  George Snyder, which is Claim Number 5, and since this seemed

6  to help us with some efficiencies in the hearing, I'm going to

7  just go through some of my observations of what the parties

8  have argued at this point and just ask if there's additional

9  clarification or other remarks that anyone wants to add?

10           So, I have Claim Number 5-1 that was filed by George

11  Snyder in the amount of $99,000 as an unsecured claim or,

12  quote, wage, Fair Labor Standards, end quote.  There was no

13  supporting documentation attached to the claim, but it was

14  timely filed.  Ms. Biros has filed an objection indicating that

15  Mr. Snyder signed the schedules without listing a wage claim

16  and should be judicially estopped from doing so now, and at the

17  341 meeting, Mr. Snyder allegedly testified that, quote, the

18  $99,000 is what Biros would owe me, end quote, because he never

19  received officer compensation for the last seven years.

20           Ms. Biros asserts that the Fair Labor Standards Act

21  does not apply to these claims because, one, Snyder is not an

22  employee of the Debtor and testified the Debtor has no

23  employees.  The FLSA carves out establishments whose only

24  regular employees are the owner and immediate family members,

25  so Snyder is not entitled to a minimum wage.

1          In addition there is no evidence that Snyder was a

2 contractor for U LOCK, and even if he could assert a claim, the

3 statute of limitations is two years, not seven.  Mr. Snyder has

4 filed a response, indicating that he worked for Biros, and if

5 she is correct and owned the business at all times since 2015,

6 he filed the claim after researching Shanni's FLSA claim.  He

7 also cites to Section 13(a)(1) and 13(a)(17) of the FLSA, which

8 provides exemptions from Section 206 regarding minimum wage

9 requirements for employees in a bona fide executive,

10 administrative, or professional capacity, and certain skilled

11 computer workers, and the declaration provides as calculation,

12 assuming he worked four to five hours a day five days a week.

13 Mr. Snyder also asserts he doubled the amount of his actual

14 claim as liquidated damages.

15          So, that's the context of how I understand the claim

16 objection and I'll ask the parties if there's anything in

17 addition that they wish to add separate and apart from what's

18 already in the papers.  Mr. Bernstein?

19          MR. BERNSTEIN:  Assuming that Your Honor was

20 highlighting what was in the papers and not making an

21 exhaustive recitation, we have nothing else to add to what was

22 in our objection.

23          THE COURT:  All right.  Thank you.  Mr. Snyder,

24 anything else you want to add?

25          MR. SNYDER:  Not much.  You covered mostly

1   everything.  I just wanted to add the one thing that Mr. Slone

2   --

3            MR. BERNSTEIN:  Your Honor, I'm sorry.  Could we --

4   because Mr. Snyder is representing himself, is it possible that

5   he be sworn for these assertions so that we have a clear

6   record?

7            THE COURT:  I don't have any issue with that.  Mr.

8   Snyder, you understand what we're going to do is we're going to

9   put you under oath and so any statements that you give are

10  going to be your sworn testimony in this matter?

11           MR. SNYDER:  Yes, I do.

12           THE COURT:  Okay.  If you can please rise and raise

13  your right hand and I'll ask the court reporter to please swear

14  you in.

15                  GEORGE SNYDER, WITNESS, SWORN

16           ECRO:  Thank you, and if you can please speak clearly

17  into the microphone.  Thank you.

18           MR. SNYDER:  Okay, yeah.  I noticed I did that.  Kay.

19           The only other thing I wanted to add throughout this

20  whole process, right after we handed in the schedules, I was

21  also going to -- Mr. Slone and I were talking about amending

22  the schedules, so I could have amended that part as well.  I

23  just thought I'd mention that.

24           THE COURT:  Okay.  But, nothing further at this

25  point?

1        MR. SNYDER:  No.

2        THE COURT:  All right.  Well, upon review of the

3   papers and review of the claim, I'm going to make the following

4   findings.  Number one, as noted before, the claim is just a

5   bare bones claim.  It does not have any supporting

6   documentation substantiating the amounts claimed, or breakdown

7   of the time periods, or the time frames by which the wages were

8   accrued, and so under the <u>Allegheny International</u> line of cases

9   that followed from the Third Circuit decision there, I find

10  that it's not entitled to prima facie validity.  And in

11  addition to that, I do think that there are valid points that

12  have been raised by Christine Biros with respect to

13  deficiencies in the claim.

14        First off, under applicable law, 29 U.S.C.A. Section

15  203(s)(2), provides, quote, any establishment that has as its

16  only regular employees, the owner thereof, or the parent,

17  spouse, child, or other member of the immediate family of such

18  owner, shall not be considered to be an enterprise engaged in

19  commerce, or in the production of goods for commerce, or a part

20  of such an enterprise, end quote.

21        Relatedly, Section 29 U.S.C.A., Section 206 provides,

22  quote, every employer shall pay to each of his employees, who

23  in any work week is engaged in commerce, or in the production

24  of goods for commerce, or is employed in an enterprise engaged

25  in commerce, or in the production of goods for commerce, wages,

1 at the following rates, end quote.

2          Here, the Court is finding that this did not
3 constitute -- U LOCK did not constitute an entity or an
4 enterprise engaged in commerce, since he was -- George Snyder
5 was the owner, U LOCK had no other employees, and consequently
6 George does not appear to be an employee as qualified under the
7 FLSA.

8          I also note that the statute does provide under 29
9 U.S.C., Section 255(a), that there is a two year statute of
10 limitations except that an action arising from a willful
11 violation may be commenced within three years.  Here, the
12 allegation is that some of these claims may reach as far back
13 from 2015 to at least 2019 and, therefore, would seemingly be
14 time barred.

15          I also note that the response that was given does
16 seem to have some inconsistencies.  I'm not sure exactly why
17 Mr. Snyder is claiming exemptions under the FLSA, because the
18 exemptions would not be helpful to him and, in fact, would
19 exclude U LOCK or his status from coverage for wages.

20          It also appears to me that Claim 5-1 appears to be an
21 attempt to recoup lost sweat equity or capital contributions
22 that were provided through his labor and efforts, rather than a
23 wage.

24          And, finally, and also compelling, is that the claim
25 does conflict with sworn statements that were given elsewhere

in this case, particularly with respect to the schedules and
testimony at the 341 meeting and in other sworn declarations.
So, for all those reasons, I find that the objection is well-
founded and I will sustain the objection and deny Mr. Snyder's
claim.

So, that brings us forward to the next claim
objection which is the objection to Claim Number 1 filed by
Shanni Snyder.  This was a claim filed in the amount of
$263,100, originally as a secured judgment.  Ms. Biros has
filed an objection, asserting that Shanni was not an employee
of U LOCK, and as is supported by Shanni's schedules, and given
her failure to properly schedule a wage claim, Shanni should be
judicially estopped from asserting one now.

Both George and Kash Snyder have testified
extensively that U LOCK had no employees and did not consider
Shanni Snyder to be an employee.  She also notes that there is
no evidence that Shanni was a contractor of U LOCK and further
observes that Shanni does not qualify as an employee under the
FLSA because U LOCK was an immediately -- or an immediate
family-owned business.  And, even if she had such a claim under
the FLSA, the statute of limitations is two years.

Biros' also asserts that the claimant Shanni worked
for ten hours a night, every night, for four years, is on its
face incredible, and given that the security setup at the site
did not have wifi or other connectivity, it is unclear how

FILED
4/14/23 2:16 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>U LOCK INC,<br><br>        Debtor. | Bankruptcy No. 22-20823<br><br>Chapter 7 |
| CHRISTINE BIROS,<br><br>        Movant,<br><br>        v.<br><br>GEORGE SNYDER,<br><br>        Respondent. | Related Doc. No.: 337 |

**ORDER OF COURT**

AND NOW, this _____14th_____ day of _____April_____, 2023, upon consideration of the foregoing *OBJECTION TO CLAIM NUMBER 5 FILED BY GEORGE SNYDER* (the "Objection"), it is hereby ORDERED that the Claim is DISALLOWED and EXPUNGED.

Dated: 4/14/23

_____
Hon. Gregory L. Taddonio    hct
United States Chief Bankruptcy Judge

FILED
04/24/2023 9:58 AM
CLERK
U.S. BANKRUPTCY
COURT - WDPA

Official Form 417A (12/18)

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:  U LOCK INC.,
                         Debtor,
CHRISTINE BIROS, Movant
v.
GEORGE SNYDER, Respondent

**Case 22-20823 GLT**

*[Caption as in Form 416A, 416B, or 416D, as appropriate]*

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):

   **GEORGE SNYDER**

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ☐ Plaintiff | |
| ☐ Defendant | ☐ Debtor |
| ☐ Other (describe) _____ | ☒ Creditor |
| | ☐ Trustee |
| | ☐ Other (describe) _____ |

### Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from:  _April 14 2023 Entry 366_____

2. State the date on which the judgment, order, or decree was entered:  __April 14 2023_____

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: ___George Snyder__    By:        __George Snyder
   ___PO Box 15_____
   _____Irwin  PA   15642_____

2. Party: __Christine Biros_    Attorney: __Robert S. Bernstein, Esq_____
   __601 Grant Street, Floor 9___
   ____Pittsburgh  PA   15219   ___
   ____412-456-8100_____

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

❑ XXX Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

_/ George Snyder_

_____                              Date: ___April 24, 2023_____
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):

**George Snyder**
**PO Box 15**
**Irwin PA  15642**

**(412) 829-9999**

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[**Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]